**Danlasky v Consolidated Edison Co. of N.Y.**

2026 NY Slip Op 30933(U)

March 13, 2026

Supreme Court, New York County

Docket Number: Index No. 155753/2020

Judge: Hasa A. Kingo

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. HASA A. KINGO** | PART **65M** |
| *Justice* | |

-----------------------------------------------------------------------------X

STACY DANLASKY,

                                        Plaintiff,

                          - v -

CONSOLIDATED EDISON COMPANY OF NEW YORK,
NWE CORP

                                        Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155753/2020 |
| MOTION DATE | 04/30/2025, 04/30/2025 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 84, 85, 86, 87, 90, 93, 95, 96, 97, 98

were read on this motion for                          SUMMARY JUDGMENT                          .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 81, 82, 83, 88, 89, 91, 94

were read on this motion to/for                          SUMMARY JUDGMENT                          .

Upon the foregoing documents, defendants NWE Corp. ("NWE") and Consolidated Edison Company of New York ("Con Edison") each move for summary judgment to dismiss the complaint and all crossclaims and counterclaims against them. Plaintiff Stacy Danlasky ("Plaintiff") opposes both motions. For the reasons set forth herein, both motions are granted and the complaint is dismissed.

## BACKGROUND

In this personal injury action, Plaintiff seeks damages for injuries she purportedly incurred on March 6, 2019 when she tripped and fell on a "shunt board" that was being used to cover electrical wires on the sidewalk in front of 33 East 61st Street, New York, New York ("Premises") (NYSCEF Doc No. 70, Plaintiff dep tr at 24; NYSCEF Doc No. 71-72, photographs).

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL
Motion No.  002 003

Page 1 of 8

[* 1]

On July 27, 2020, Plaintiff commenced this action by filing a summons and complaint (NYSCEF Doc No. 1). Con Edison and NWE Corp. (together, "Defendants") appeared by filing answers on November 18, 2020 and February 22, 2021, respectively (NYSCEF Doc No. 4, 11). NWE later moved for leave to file an amended answer, which was granted by an order of the court dated June 27, 2026 (NYSCEF Doc No. 32, order, Hagler, J.). The parties proceeded with discovery, and Plaintiff filed the note of issue on March 3, 2025 (NYSCEF Doc No. 48).

NWE and Con Edison now separately move for summary judgment to dismiss the complaint as against them. In support of its motion (Motion Seq. 002), NWE argues that the shunt board that purportedly caused Plaintiff to fall is statutorily mandated, not an inherently dangerous condition, there is no evidence that Plaintiff's fall was proximately caused by any actionable, hazardous condition, and that NWE did not cause or create the condition because the shunt board was owned and placed by Con Edison (NYSCEF Doc No. 77, memo in support). NWE also moves to dismiss Con Edison's crossclaims against it because a cause of action for common law indemnification or contribution against NWE cannot survive where Plaintiff cannot maintain a cause of action for negligence against NWE. Finally, NWE argues that a cause of action for contractual indemnification against NWE cannot survive because there is no written indemnification provision or insurance requirement in any agreement between NWE and Con Edison.

In its motion (Motion Seq. 003) and in response to NWE's motion, Con Edison joins in NWE's arguments that the alleged condition is open and obvious and not inherently dangerous, and further argues that the alleged condition was *de minimis* and nonactionable. Con Edison opposes NWE's motion only to the extent of arguing that if the court denies Con Edison's motion, it should deny NWE's motion as well. Con Edison also contends that if the motions are denied, material questions of fact exist regarding whether NWE made special use of the sidewalk because the shunt was placed on the sidewalk for NWE's benefit to provide temporary power to the Premises while Con Edison performed a service upgrade.

Plaintiff opposes both motions and argues that the raised seam between the shunt boards created an uneven, protruding surface on a busy public sidewalk, which is inherently dangerous as a matter of law. In the alternative, Plaintiff argues that material questions of fact exist for trial regarding whether the condition is open and obvious and inherently dangerous. With respect to NWE, Plaintiff argues that NWE may not be relieved of its non-delegable duty to maintain the sidewalk by claiming that Con Edison was responsible for the sidewalk's condition, that NWE has not demonstrated that it did not create or have notice of the condition, and is not entitled to dismissal of Con Edison's crossclaims because a contribution claim may be made even where the contributor has no duty to the injured plaintiff (NYSCEF Doc No. 90, Linder aff in opp).

Finally, both NWE and Con Edison ask the court to reject Plaintiff's oppositions as untimely, as they were filed more than four months after the deadline for opposition submissions.

**EVIDENTIARY RECORD**

The evidence submitted by the parties includes, *inter alia*, pleadings and other filings, transcripts of depositions of Plaintiff, Mohammad Hossain, a Customer Project Manager for Con

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL          Page 2 of 8
Motion No.  002 003

2 of 8

[* 2]

Edison, and photographs of the shunt boards taken by Plaintiff. Plaintiff described the purported defect and circumstances of her fall in a deposition taken on April 8, 2022 (NYSCEF Doc No. 57, plaintiff deposition tr). She testified that she fell on 61st Street, between Madison and Park Avenues at approximately 1:00 p.m. on Wednesday, March 6, 2019 (NYSCEF Doc No. 57, plaintiff deposition tr at 16). Before the incident, she dropped off her son at a theater program in midtown and walked up Park Avenue to 61st Street (*id*. at 17). She turned left onto 61st Street and headed towards 29 East 61st Street to a hair salon for a hair appointment (*id*. at 17, 19). The location where she fell was past the middle of the block, closer to Madison Avenue (*id*. at 27, ln 10-11). It was not raining or snowing at the time of the incident (*id*. at 20, ln 8-9). She was familiar with the block in question because she has her hair cut at the salon she was visiting that day, and estimated that she had been on the block within six months of the incident (*id*. 21-22). She testified that there was heavy pedestrian traffic because "it was lunchtime and so people were out and about" (*id*. at 22, ln 7-10). She was wearing flat boots, had her handbag over her shoulder, and was carrying her cell phone in her left hand (*id*. at 22-23).

Referring to the street shunt, Plaintiff testified that "[t]he rubber that was covering wires" caused her to fall (*id*. at 22, ln 24-25). She confirmed that the shunt spanned the width of the sidewalk, from the building to the curb (*id*. at 27-28). She testified that it was about seven or eight inches wide and three inches tall, sloped, and "pieced together like a child's mat, like a puzzle" (*id*. at 28). She testified that she saw Con Edison cones against the building, but it is unclear from the transcript whether she saw the cones before or after her fall (*id*. at 29). Plaintiff did not see anyone else trip or fall on the shunt (*id*., ln 12-22; 30, ln 11), and she did not see the shunt before she fell (*id*. at 27, ln 17). She did not recall whether anyone was directly in front of her just before she fell (*id*. at 25, ln 7). She also could not recall whether there was anything blocking or covering the shunt or preventing her from seeing the shunt had she looked down before she got there, but speculated that people was a "possibility" (*id*. at 34-35). When counsel inquired whether she was able to see the shunt as she approached it from down the block, she responded that "I didn't acknowledge it, no," and added "no" when asked a second time (*id*. at 29-30). She made contact with the shunt with the front or heel of her boot with her left foot and fell forward (*id*. at 33).

Approximately an hour after she fell, Plaintiff returned to the Premises and took two photographs of the shunt (*id*. at 40, ln 19-20). Plaintiff identified the photographs at a deposition, and counsel circled the area she identified as the place where her foot made contact with the shunt board (*id*. at 44, ln 23; NYSCEF Doc Nos. 71-72, photographs). The first photograph depicts four connected shunt boards that span the width of the sidewalk (NYSCEF Doc No. 71). The shunt boards are bright orange with black rubber ramps on both sides, closing the space between the shunt boards and the sidewalk (*id*.). A large, orange cone bearing a Con Edison logo and two bands of white, reflective tape is placed on top of the shunt board furthest to the right (*id*.). The area identified as where Plaintiff's foot made contact is at the connection point between the two middle shunt boards (*id*.) Plaintiff's second photo offers a closer view of this connection point (NYSCEF Doc No. 71). The photo depicts the two shunt board sections, which are connected by a tab and slot on the attached rubber ramp, similar to the connection of two puzzle pieces (*id*.). The right shunt board is slightly raised at the seam where the two orange shunt boards meet, leaving a gap between the pieces (*id*.). Plaintiff identified this raised seam as the condition that caused her to fall (NYSCEF Doc No. 91, Linder aff in opp ¶ 5).

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL
Motion No.  002 003

Page 3 of 8

Mohammad Hossain, a Customer Project Manager for Con Edison testified at a deposition regarding installation and use of the street shunt (NYSCEF Doc No. 59, Hossain deposition tr). Hossain testified that, at the time of the deposition, he had been employed by Con Edison for approximately five years (*id*. at 11-12). At the time of Plaintiff's fall, Hossain was employed by Con Edison as a planner, also known as a work organizer for Electrical Operations in Manhattan (*id*.). In this capacity, he was responsible for "maintain[ing] scheduled work, inspections, repairs, anything related to electrical operations" (*id*. at 12). Hossain testified that whenever a shunt is installed, a shunt board is required to be installed on top of the cable for public safety so that no one trips or falls (*id*. at 33-34). He testified that when a shunt board is installed, it is placed on top of the temporary cables, also known as shunts, and "more often the shunt boards are placed together like a block, like a Lego block; one with each other interconnected to make it safe so that when the pedestrian is walking or a wheelchair or any kind of like stroller going on top of it, it's safe for the public to cross that part of the shunt board" (*id*. at 41). Hossain testified that the shunt boards are "a very bright color," so that even at night or at very low light, "you could distinguish a shunt board on the walk" (*id*. at 41-42).

## DISCUSSION

Pursuant to CPLR § 3212(b), a motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013] [internal quotation marks and citation omitted]). Upon proffer of evidence establishing a *prima facie* case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010] [internal quotation marks and citation omitted]).

To maintain a cause of action in negligence, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Pasternack v Lab's Corp. of Am. Holdings*, 27 NY3d 817, 825 [2016]). "The question of whether a defendant owes a legally recognized duty of care to a plaintiff is the threshold question in any negligence action" (*On v BKO Exp. LLC*, 148 AD3d 50, 53 [1st Dept 2017]). "In the absence of a duty, as a matter of law, there can be no liability" (*Pasternack*, 27 NY3d at 825). "Liability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of such premises" (*Balsam v Delma Eng'g Corp.*, 139 AD2d 292, 296 [1st Dept 1988]). "The existence of one or more of these elements is sufficient to give rise to a duty of care" (*id*.).

It is well established that owners of real property have a duty to maintain their property in a reasonably safe condition (*Mejia v New York City Transit Auth.*, 291 AD2d 225, 225-26 [1st

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL                                         Page 4 of 8

Motion No.  002 003

Dept 2002]). Additionally, New York City Administrative Code § 7-210 "generally imposes liability for injuries resulting from negligent sidewalk maintenance on the abutting property owners" (*Storper v Kobe Club*, 76 AD3d 426, [1st Dept 2010]; Administrative Code of City of NY § 7-210 [a]-[b]). To be entitled to summary judgment, a property owner is required to establish that it maintained its premises in a reasonably safe manner, and that it did not create a dangerous condition which posed a foreseeable risk of injury of individuals expected to be present on the property (*Westbrook v WR Activities-Cabrera Markets*, 5 AD3d 69, 71 [1st Dept 2004]).

Both NWE and Con Edison move for summary judgment to dismiss the complaint chiefly on the grounds that the condition Plaintiff identified as having caused her fall is open and obvious and not inherently dangerous as a matter of law. If a hazard or dangerous condition on the premises is open and obvious, the defendant has no duty to warn a visitor of the danger (*Westbrook*, 5 AD3d at 71). "The hazard or dangerous condition must be of a nature that could not reasonably be overlooked by anyone in the area whose eyes were open" (*id.*, citing *Tagle v Jakob*, 97 NY2d 165 [2001]). "[T]he question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion" (*id.* at 72).

Distinct from the duty to warn, Property owners also have a duty to maintain their premises in a reasonably safe condition, which is not relieved because a hazardous condition is open an obvious (*id.*). "[W]hether a dangerous or defective condition exists on the property [] so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury" (*Trincere v County of Suffolk*, 90 NY2d 976, 977 [1997]). Nevertheless, "in some instances, the trivial nature of the defect may loom larger than another element" (*id.*). A defendant that seeks summary judgment dismissing a complaint on the basis of the trivial defect doctrine must first "make a prima facie showing that the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses" (*Hutchinson v Sheridan Hill House Corp.*, 26 NY3d 66, 79 [2015]). A holding of triviality must be based on all the facts and circumstances of the case, including the width, depth, elevation, irregularity, and appearance of the alleged defect, along with the time, place, and circumstance of the injury (*id.* at 77, citing *Trincere*, 90 NY2d at 978). The relevant question is not whether an alleged defect is capable of "catching a pedestrian's shoe," but rather, "whether the defect was difficult for a pedestrian to see or to identify as a hazard or difficult to pass over safely on foot in light of the surrounding circumstances" (*Hutchinson*, 26 NY3d at 80).

Once a defendant makes a prima facie showing that the condition is trivial, the burden shifts to the plaintiff to establish an issue of fact requiring a trial (*id.* at 79). Where the plaintiff cannot show an issue of fact, the defendant is entitled to summary judgment (*see Boyd v New York City Hous. Auth.*, 105 AD3d 542, 543-544 [1st Dept 2013] ["[A] court is not precluded from granting summary judgment, where the condition complained of was both open and obvious and, as a matter of law, not inherently dangerous"] [internal citations omitted]; *Philips v Paco*, 106 AD3d 631 [1st Dept 2013] [judgment as a matter of law is justified when "the condition in question was not inherently dangerous and could be easily observed through the reasonable use of one's senses"]).

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL
Motion No.  002 003

Page 5 of 8

5 of 8

[* 5]

The alleged defect in this case is a raised edge between two sections of a street shunt placed on a public sidewalk by Con Edison (NYSCEF Doc No. 91, Linder aff in opp ¶ 2). A shunt is a "temporary electrical cable or conduit that has been installed between two points to divert current from one path, which is no longer in use, to another path" (34 RCNY § 2-01). A "street shunt" is a shunt that runs from a streetlight/lamppost or utility access cover along a roadway and/or sidewalk to a property or other streetlight/lamppost" (*id*.). The use of shunt boards and ramps is statutorily mandated whenever a street shunt is in use (34 RCNY § 2-20 [b][7] ["The sidewalk areas over which the shunt runs and all wires shall be protected and ramped with a reflective covering."]). In this case, Con Edison recommended that the existing cable that supplied power to the Premises be upgraded, and it placed the street shunt on the sidewalk to temporarily supply power to the Premises while conducting the upgrade (NYSCEF Doc No. 59, Hossain deposition tr at 22, ln 10-17).

Here, Plaintiff's deposition testimony and photographs of the purported defect compel a conclusion that the condition alleged to have caused Plaintiff's fall was open and obvious and not inherently dangerous as a matter of law. As depicted in the photographs, the shunt boards spanned the entire width of the sidewalk and were not concealed in any manner (NYSCEF Doc No. 71-72, photographs). The boards were colored bright orange and marked by a large orange cone topped with two wide stripes of reflective tape, making them easily discernable from the sidewalk and other surroundings (NYSCEF Doc No. 71-72, photographs). Con Edison's witness, Mr. Hossain, testified that the shunt boards are "a very bright color," so that even at night or at very low light, "you could distinguish a shunt board on the walk" (NYSCEF Doc No. 59, Hossain deposition tr at 41-42). The incident happened at midday when it was not raining or snowing, and there is no allegation that the area was poorly lit (NYSCEF Doc No. 57, plaintiff deposition tr at 20, ln 8-9; NYSCEF Doc No. 71-72, photographs). Plaintiff testified that she was not wearing sunglasses at the time of the fall, and she walked over half a black down 61st Street towards the shunt before striking it (NYSCEF Doc No. 57, plaintiff deposition tr at (*id*. at 27, ln 10-11; 74, 7-8).

Given the bright color of the boards and cone, daytime lighting conditions, and clear weather, an individual walking towards the shunt boards for half a block and making reasonable use of their senses could not have reasonably overlooked the shunt boards and cone absent other interference (*see Westbrook*, 5 AD3d at 71). Although Plaintiff testified that the area was crowded and acknowledged the "possibility" that other individuals may have obstructed her view, she could not recall whether anyone was directly in front of her prior to the accident, nor could she identify anything that blocked the shunt or otherwise prevented her from seeing it had she looked down before encountering it (25, ln 2-14; 34-35). Plaintiff's mere speculation regarding whether her view was obstructed is insufficient to defeat a motion for summary judgment (*see Espinal v Trezechahn 1065 Ave. of Americas*, 94AD3d 611, 613 [1st Dept 2012]). As such, the condition was open and obvious as a matter of law.

The second photograph depicts a close view of the purported defect, a gap between the two shunt boards caused by the right board being raised slightly higher than the left board (NYSCEF Doc No. 72). Plaintiff testified at her deposition that the shunt board and ramps were about seven or eight inches wide and three inches tall (NYSCEF Doc No. 57, plaintiff deposition tr at 28). Given the height of the board, it is clear from the photograph that the gap between the boards is approximately or less than 1/2 inch wide (*id*). Notably, the gap between the shunt boards is visibly

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL                    Page 6 of 8
Motion No.  002 003

6 of 8

[* 6]

narrower than the gap between the sidewalk flags sitting underneath the shunt and shunt boards (*id*.). Although there is no per se rule that a defect must be of a minimum dimension to be actionable, courts have often held that a gap or height differential of this size is not inherently dangerous (*see Trincere v County of Suffolk*, 90 NY2d at 977; *Schwartz v Bleu Evolution Bar & Rest. Corp.*, 90 AD3d 488, 488 [1st Dept 2011]). Moreover, the edges of the gap are smooth, not jagged or irregular, and there are no other defective conditions nearby (NYSCEF Doc No. 72). This supports a conclusion that the gap between the seams is a trivial defect (*see cf. Hutchinson*, 26 NY3d at 78 [jagged edges, rough, irregular surface, and nearby defects may render a physically small defect actionable]).

Accordingly, Defendants have met their prima facie burden of demonstrating that the condition alleged to have caused Plaintiff to fall was open and obvious and not inherently dangerous as a matter of law. Plaintiff's reliance on *Weidenbeck v. Lawrence* (170 AD3d 1669, 1670 [4th Dept 2019]) and *Cook v. Consolidated Edison Co. of NY, Inc.* (51 AD3d 447, 448 [1st Dept 2008]) in opposition to the motion is misplaced. In *Weidenbeck*, the Appellate Division, Fourth Department, held that a question of fact existed as to whether a ridged metal threshold strip affixed to the step in the entryway of a commercial building constituted a dangerous or defective condition, where it was "impossible to ascertain from the black-and-white photographs . . . the width, depth, elevation, height differential, or actual appearance of the threshold" (170 AD3d at 1670). In contrast, the photos in evidence here are full color and clearly depict the purportedly defective condition in detail, both from several feet away and close range (NYSCEF Doc No. 71-72).

*Cook* is distinguishable from this matter because the gap that caused the plaintiff to fall in that matter was caused by the shunt boards separating and there was testimonial evidence in *Cook* that the shunt boards had separated on five prior occasions, which created a material issue of fact regarding whether there was a recurring dangerous condition (*Cook v. Consolidated Edison Co. of NY, Inc.*, 2007 NY Slip Op 33232 [U] [Sup Ct, NY County 2007], *affd* 51 AD3d 447 [2008]). By contrast, the boards in this case were securely attached and the gap was caused by a raised edge. Moreover, the plaintiff in *Cook* testified that her line of sight to the gap was obstructed by other pedestrians who were wearing long coats and carrying shopping bags (*see Cook*, 51 AD3d at 448). Here, by contrast, Plaintiff could not recall whether anything obstructed her view.

Although *Cook* demonstrates that a defective sidewalk shunt *may* constitute a dangerous condition, the court's findings must nevertheless be based on a fact specific inquiry of the circumstances of each case (*Hutchinson*, 26 NY3d at 79; *Westbrook,* 5 AD3d at 71; *Trincere*, 90 NY2d at 977). Here, the evidentiary record compels a conclusion that the condition in question was open and obvious and not inherently dangerous as a matter of law. Therefore, Defendants are entitled to summary judgment dismissing the complaint.

To the extent they are not addressed here, the court has considered all arguments raised by the parties and found them immaterial or otherwise unpersuasive. Accordingly, it is

ORDERED that both motions for summary judgment are granted, and the complaint is dismissed with costs and disbursements to defendants NWE and Con Edison as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL
Motion No.  002 003

Page 7 of 8

7 of 8

ORDERED that all crossclaims and counterclaims are dismissed; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

This constitutes the decision and order of the court.

20260313160603HKINGOA01...8F19C4CBFA9507461FA115A3F

| 3/13/2026 | | | | | | HASA A. KINGO, J.S.C. | |
| DATE | | | | | | | |

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| | | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155753/2020   DANLASKY, STACY vs. CONSOLIDATED EDISON COMPANY OF NEW YORK ET AL**
**Motion No.  002 003**

Page 8 of 8

[* 8]